# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Civil Action No. 17-cv-1007-WJM

WILLIAM SEMPLE, individually;
THE COALITION FOR COLORADO UNIVERSAL HEALTH CARE, a/k/a COOPERATE COLORADO, a not-for-profit corporation;
COLORADOCAREYES, a Colorado not-for-profit corporation; and
DANIEL HAYES, individually,

    Plaintiffs,

v.

WAYNE W. WILLIAMS, in his official capacity as Secretary of State of Colorado,

    Defendant.

## ORDER MAKING ABSOLUTE ORDER TO SHOW CAUSE

In November 2016, Colorado voters approved "Amendment 71," which altered the state's citizen initiative process with respect to constitutional amendments (although not with respect to legislation). Before Amendment 71, one could place a constitutional amendment initiative on the ballot by gathering supporting "signatures by registered electors in an amount equal to at least five percent of the total number of votes cast for all candidates for the office of secretary of state at the previous general election." Colo. Const. art. V, § 1(2). Amendment 71 added a new subsection 2.5 to that same section of the Colorado Constitution, requiring supporters to gather—in addition to the five-percent requirement—signatures from "registered electors [*i.e.*, registered voters] who reside in *each state senate district* in Colorado in an amount equal to at least two percent of the total registered electors in the senate district" (emphasis added).

William Semple, the Coalition for Colorado Universal Health Care, ColoradoCareYes, and Daniel Hayes (together, "Plaintiffs") brought this action challenging subsection 2.5, naming as the sole defendant Wayne W. Williams in his official capacity as Colorado's secretary of state—to whom the Court will refer simply as "Colorado" or "the state." Plaintiffs argued that subsection 2.5 violates Colorado citizens' right to equal protection under the Fourteenth Amendment of the U.S. Constitution, and also violates certain First Amendment rights under the U.S. Constitution.

Colorado filed a motion to dismiss, arguing that requirements such as subsection 2.5 are constitutionally permissible. (ECF No. 13.) This Court recently denied that motion and held that subsection 2.5 violates the "one person, one vote" principle inherent in the Equal Protection Clause because voter population varies widely between state senate districts. *See Semple v. Williams*, ___ F. Supp. 3d ___, 2018 WL 858292, at *7–15 (D. Colo. Feb. 14, 2018) (ECF No. 18 at 13–29). Given this ruling, the Court declined to rule on Plaintiffs' First Amendment arguments and on Plaintiffs' argument that requiring statewide support would not be a legitimate interest even if state senate districts had roughly equal voter population. *Id.* at *2, *15 n.18 (ECF No. 18 at 5, 29 n.8).

"Because there [was] no pending cross-motion from Plaintiffs (*e.g.*, for summary judgment)," the Court ordered Colorado to show cause "why final judgment and a permanent injunction should not enter." *Id.* at *1 (ECF No. 18 at 2). The Court specifically stated that "if Colorado has a good faith basis for believing it can develop empirical data showing that vote dilution is not actually occurring as between the

2

various state senate districts, the Court will not foreclose that opportunity." *Id.* at *15 (ECF No. 18 at 30). Thus, Colorado's response to the order to show cause was its "opportunity to request such discovery, or to state any other reason why it would be premature to enter a permanent injunction and final judgment." *Id.* (ECF No. 18 at 30–31).

Currently before the Court is Colorado's response (ECF No. 20) and Plaintiffs' reply (ECF No. 22). Colorado first argues that the Court's order impermissibly shifts the burden of proof, requiring Colorado to demonstrate that subsection 2.5 is constitutional rather than requiring Plaintiffs to demonstrate the opposite. (ECF No. 20 at 3–4.) This is a purely technical objection in the present circumstances.

Plaintiffs, through their complaint, explained their challenge to subsection 2.5. (ECF No. 1.) Colorado moved to dismiss, arguing that all of Plaintiffs' asserted challenges to subsection 2.5 fail as a matter of law. (ECF No. 13.) Of particular importance here, Colorado argued that the Supreme Court's recent decision in *Evenwel v. Abbott*, 136 S. Ct. 1120 (2016), upheld state legislative districts based on total population as opposed to voter population. (*Id.* at 6.) Plaintiffs responded that *Evenwel* was specifically about representational equality and does not apply in the context of citizen initiatives. (ECF No. 16 at 13–14.) Colorado then filed a reply, re-urging its view of *Evenwel*. (ECF No. 17 at 2–3.)

This Court ultimately agreed with Plaintiffs that *Evenwel* was not relevant because this case was not about representational equality: "with no 'representation' in the ballot petition form of direct democratic rule, there is no representative equality component of the equation to balance against the integrity of the vote. In other words,

3

there is no representation; there is only voting." *Semple*, 2018 WL 858292, at *10 (ECF No. 18 at 19). Moreover, as to lower-court cases cited by Colorado that upheld geography-based signature-gathering requirements similar to subsection 2.5, the Court found that they did not directly address the argument Plaintiffs made here about the disparity between voting population and total population. *Id.* at *7, *11–13 (ECF No. 18 at 12–13, 22–25). The Court concluded, therefore, that "subsection 2.5 creates a classic vote-dilution problem, demanding strict scrutiny under the Equal Protection Clause." *Id.* at *14 (ECF No. 18 at 27). The Court then subjected subsection 2.5 to the test articulated by *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and found that subsection 2.5 did not withstand such scrutiny. *Id.* at *5–6, *14 (ECF No. 18 at 9–11, 27–29).

In short, Colorado had a full opportunity to explain why, in its view, subsection 2.5 is constitutional. The Court has determined that Colorado's arguments are not persuasive. It is not clear what is left to decide, regardless of who bears the burden. The Court therefore rejects this argument.

Colorado next objects that entering a final judgment and permanent injunction at such an early stage would deprive it of "standard procedural rights granted by the Federal Rules of Civil Procedure, such as the ability to answer the complaint, a meaningful opportunity to develop defenses through fact and expert discovery, and the right to present evidence in support of those defenses at either the dispositive motion or trial stages." (ECF No. 20 at 4.) This is precisely why the Court asked Colorado to inform it of any "good faith basis for believing it can develop empirical data showing that vote dilution is not actually occurring as between the various state senate districts," and

4

of "any other reason why it would be premature to enter a permanent injunction and final judgment." *Semple*, 2018 WL 858292, at *15 (ECF No. 18 at 30–31).

Colorado, however, does not state any means by which it can demonstrate that vote dilution is not occurring. In particular, Colorado does not deny Plaintiffs' claim (which is likely judicially noticeable in any event) that the registered voter population varies by as much as 60% among Colorado's state senate districts. (*See* ECF No. 1 ¶ 40.) Colorado instead seeks an opportunity to develop other forms of discovery, such as discovery establishing Colorado's "compelling state interest in ensuring that initiated constitutional amendments have some level of support from citizens across the State before they appear on the statewide ballot." (ECF No. 20 at 7; *see also id*. at 7–10.) But in the present posture, this is irrelevant. The Court expressly avoided any ruling on the question of whether statewide support is a valid state interest. *Semple*, 2018 WL 858292, at *15 n.18 (ECF No. 18 at 29 n.8). Such a question would only be ripe if Colorado amended subsection 2.5 to require signatures in geographic districts (be they state senate districts or otherwise) of roughly equal voter population.

Colorado also seeks an opportunity to develop expert testimony that redrawing its state senate districts to embrace roughly equal total population (as required under the United States and Colorado Constitutions) and roughly equal voter population is probably impossible. (ECF No. 20 at 10–11.) Again, this is irrelevant. There is no *a priori* requirement that the relevant geographic unit in any geography-based signature-gathering must be a state senate district, or any sort of legislative district. It simply must be a geographic district with roughly equal registered voter population as compared to all the other relevant geographic districts—assuming, again, that geography-based

5

signature-gathering requirements are constitutional, which this Court does not address.

As it happens, subsection 2.5 looks to state senate districts. Thus, without amendment, it is unconstitutional unless Colorado can reshape its state senate districts to embrace roughly equal total and registered voter population. The Court does not doubt the difficulty—the practical impossibility, perhaps—of that task. But that only means that subsection 2.5's drafters made an unwise choice. It does not somehow give Colorado a compelling interest in enforcing subsection 2.5.[1]

Finally, Colorado sets forth the upcoming deadlines related to ballot initiatives in the 2018 election cycle and argues that the Court, if it enters an injunction, should stay the injunction through the November general election. The relevant dates are as follows:

- April 6, 2018 – Last day to file a proposed initiative with the Secretary for consideration by Title Board for measures that will appear on the November 2018 General Election ballot.

- April 18, 2018 – Last Title Board meeting, and thus last opportunity to have an initiative title set, for measures that will appear on the November 2018 General Election ballot. § 1-40-106(1), C.R.S.

- August 6, 2018 – Deadline for initiative proponents to file signed initiative petitions with the Secretary for the

---

[1] In a footnote, Colorado additionally argues that this Court erroneously applied the *Anderson v. Celebrezze* test to subsection 2.5 because "*Anderson* was not an Equal Protection case, but rather a First Amendment case." (ECF No. 20 at 7 n.5.) The Court's previous order explicitly stated that *Anderson* was a First Amendment case and also explained why applying it in an Equal Protection context was nonetheless appropriate: "Although the Supreme Court in *Anderson* acknowledged that it was applying this test with emphasis on the plaintiffs' First Amendment interests, it characterized the test as derived from and consistent with its previous Equal Protection cases regarding 'one person, one vote.'" *Semple*, 2018 WL 858292, at *6 (ECF No. 18 at 11). Moreover, the Tenth Circuit applies the *Anderson* test to "one person, one vote" challenges. *See Blomquist v. Thomson*, 739 F.2d 525, 527–28 (10th Cir. 1984). The *Anderson* test was therefore the appropriate analytical tool.

6

> November 2018 General Election ballot.
>
> - September 5, 2018 – Last day for the Secretary to complete his review of submitted initiative petitions and declare them sufficient or insufficient, assuming proponent submits petitions on the August 6 deadline. § 1-40-116(2), C.R.S.
>
> - September 10, 2018 – Deadline for the Secretary to certify the ballot order and content for each county, and to transmit the same to each county clerk and recorder. § 1-5-203(1), C.R.S.
>
> - November 6, 2018 – General Election.

(ECF No. 20 at 12.)

Colorado has not stated a sufficient reason for postponing the effective date of any injunction. An injunction against enforcement of subsection 2.5 would mean that initiative proponents would only need to gather, and the Secretary of State would only need to verify, "signatures by registered electors in an amount equal to at least five percent of the total number of votes cast for all candidates for the office of secretary of state at the previous general election." Colo. Const. art. V, § 1(2). In other words, an injunction would require proponents and the Secretary of State to do only what they have been doing for many years before Amendment 71 became law—which is less work than they would be required to do if this Court stayed the effective date of its injunction. A stay is therefore inappropriate.

The Court now turns to the factors it must consider before awarding permanent injunctive relief:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary

> damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between the
> plaintiff and defendant, a remedy in equity is warranted; and
> (4) that the public interest would not be disserved by a
> permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Despite the Court's order to show cause why a permanent injunction should not enter, Colorado does not argue from (or even cite) these factors.  The Court nonetheless finds that they favor Plaintiffs.

As to irreparable injury and inadequacy of money damages, vote dilution is a constitutional harm and constitutes irreparable injury—it cannot be repaired by later, undiluted votes, or by money damages.  *Cf.* 11A Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 2948.1 n.26 and accompanying text (3d ed., Apr. 2017 update) (stating, in the preliminary injunction context, that "[w]hen an alleged deprivation of a constitutional right is involved . . . most courts hold that no further showing of irreparable injury is necessary").

The balance of hardships also favors Plaintiffs: "when the law that voters wish to enact is . . . unconstitutional, their interests do not outweigh [a challenger's interest] in having his constitutional rights protected."  *Awad v. Ziriax*, 670 F.3d 1111, 1131–32 (10th Cir. 2012).

Finally, "it is always in the public interest to prevent the violation of a party's constitutional rights."  *Id.* at 1132.[2]

---

[2] Even if final judgment and a permanent injunction were not appropriate at this phase, the Court would enter a preliminary injunction (which would be immediately appealable), or, at a minimum, certify its February 14, 2018 order to the Tenth Circuit under 28 U.S.C. § 1292(b) and stay proceedings in this Court.  The parties' dispute would thus come before the Tenth Circuit sooner rather than later, as it should.

Accordingly, for the reasons set forth above, the Court ORDERS as follows:

1. The Court's Order to Show Cause (ECF No. 18) is MADE ABSOLUTE;

2. The State of Colorado, its officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with any of the foregoing, are PERMANENTLY ENJOINED from enforcing Colo. Const. art. V, § 1(2.5); and

3. The Clerk shall enter final judgment in favor of Plaintiffs and against Defendant and shall terminate this case. Plaintiffs shall have their costs upon compliance with D.C.COLO.LCivR 54.1.

Dated this 27th day of March, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge